IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ENERGYTEC, INC.,
a Nevada Corporation,                          §
                                               §
                    Plaintiff,                 §
                                               §        Civil Action No. 3:06-CV-871-L
v.                                             §        (consolidated with Civil Action No.
                                               §        3:06-CV-933-L)
                                               §
PHILIP M. PROCTOR, et al.,                     §
                                               §
                    Defendants.                §


## MEMORANDUM OPINION AND ORDER

Before the court are Defendant G. Norman Munro's Motion to Dismiss Plaintiff's First
Amended Consolidated Complaint, filed August 28, 2006, and Plaintiff's Motion for Leave to File
Supplemental Authority in Connection with Pending Motions to Dismiss, filed March 30, 2007.
After careful consideration of the motion, response, reply and applicable authority, the court **grants
in part and denies in part** Defendant G. Norman Munro's Motion to Dismiss Plaintiff's First
Amended Consolidated Complaint.  Further, the court **denies** Plaintiff's Motion for Leave to File
Supplemental Authority in Connection with Pending Motions to Dismiss.

## I.      Procedural and Factual Background

This is a securities fraud action brought by Plaintiff Energytec, Inc. ("Plaintiff" or
"Energytec") against Frank W. Cole ("Cole"), its former Chairman, Chief Executive Officer and
Chief Financial Officer; Josephine Jackson ("Jackson") Cole's executive assistant; and numerous
unlicensed broker dealers (the "Broker Defendants"), many of whom were Cole's friends and
business associates.  Defendant G. Norman Munro ("Defendant" or "Munro") is one of the Broker

**Memorandum Opinion and Order – Page 1**

Defendants.[1]  Energytec seeks to recover monetary damages incurred after the discovery of an allegedly fraudulent scheme perpetrated by Cole, Jackson and the Broker Defendants, whereby the Broker Defendants are alleged to have illegally sold Energytec securities to obtain unauthorized illegal commission payments from Energytec and/or to artificially inflate the price of Energytec's publicly traded securities.

Energytec has asserted four causes of action against Munro: (1) violation of § 10(b) Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Sixth Claim for Relief); (2) violation of § 15(a) of the Securities and Exchange Act; (3) violation of the Texas Securities Act; and (4) common law fraud (Ninth Claim for Relief).[2]  Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Munro moves to dismiss the Sixth Claim for Relief, contending that it fails to state an actionable Section 10(b) primary violation and also because it fails to state a claim under Rule 12(b)(6) in connection wit the fraud pleading requirements of Rule 9(b) and the "heightened pleading requirements" of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.  Munro also moved to dismiss the Ninth Claim for Relief, common law fraud, contending that Energytec has failed to satisfy the pleading requirements of Rule 9(b).

As set forth in the next section, for purposes of a motion to dismiss, the court assumes all well-pleaded facts in the First Amended Complaint ("Complaint") to be true.  The Complaint alleges that Cole formed Energytec in July 1999 for the purpose of engaging in oil and gas producing activities.  As part of these activities, Energytec and its investors hold "working interests in certain

---

[1]The remaining Defendants are Philip M. Proctor, Raymond J. Vula, John Petito, Melvin Seligsohn, Sam Miller, Corrine I. Weseloh and Does 1-100.  *See* Am. Compl. ¶¶ 3-10.  With the exception of Weseloh, all Defendants have filed motions to dismiss, which will be the subject of a separate memorandum opinion and order.

[2]Munro has not moved to dismiss Energytec's claims against him for violation of Section 15(a) of the Securities and Exchange Act and violations of the Texas Security Act.

**Memorandum Opinion and Order – Page 2**

oil and gas properties located in Texas and Wyoming."  Compl. ¶ 24.  From July 1999 through

March 2006, Cole served as Chairman, Chief Executive Officer and Chief Financial Officer for

Energytec.  During that time, Jackson served as his executive assistant.  Cole and Jackson controlled

Energytec's bank accounts and financial records.  Energytek alleges that at some point in time it

discovered unlawful acts in violation of state and federal securities laws by Cole, Jackson and the

Broker Defendants.   On March 18, 2006, Energytec's Board of Directors removed Cole as

Chairman, CEO and CFO of Energytec, and removed Jackson from her position.  With regard to the

details of the alleged scheme, Plaintiff alleges:

> This case involves a rogue CEO, CFO and Chairman of a publicly traded
> company – Mr. Cole – who, with the direct participation of a group of unregistered
> and thus unregulated brokers and others, developed a scheme to raise millions of
> dollars very quickly from numerous investors, including small and unsophisticated
> investors, in numerous states.  The scheme could not have succeeded without Mr.
> Cole's concealment of the scheme and related actions from[:] the Board of Directors,
> the SEC, and the Company's auditors, and could not have succeeded without the
> active participation and knowledge of the other Defendants.
>
> The heart of the scheme was that although individual investors were making
> an investment in oil wells, and properly should have been paid profits or losses based
> on the actual performance of the individual wells in which they invested (i.e.,
> whether it was a producing or non-producing well), Mr. Cole instead arranged for
> each investor to be paid a "profit" that exactly matched pre-investment projections
> given to investors, regardless of the performance of the individual wells in which
> each person invested.  Mr. Cole arranged for the payments to the investor in this way
> so the investor would believe the investment was an easy and risk-free return on the
> oil well investment.  The investor would then be more likely to purchase more
> working interests and tell his or her friends, family and colleagues about the
> opportunity, and the easy money to be had.
>
> The other Defendants knew about this guaranteed "profit" scheme and, in
> fact, working with Mr. Cole developed the scheme and the manner in which it was
> sold.  The Broker Defendants were the marketing department for the scheme, and
> directly solicited the investors to put their money into this *Ponzi*-like scheme, where
> new investor money was used to pay early investors phony "profits." [ . . .]

**Memorandum Opinion and Order – Page 3**

The motive for this scheme was simple greed.  Mr. Cole and other defendants held substantial shares of stock in the Company, and the Broker Defendants were paid millions of dollars in illegal commissions to act as the sales team for this *Ponzi*-like scheme.  As the volume and dollars invested in the Company grew, the value of Mr. Cole's holdings in the Company and the holdings of other defendants grew.

Compl. ¶¶ 15-18.

Having set forth Energytec's allegations regarding the nature of the alleged scheme to defraud, the court now looks more specifically at the allegations against Defendant Munro in particular.  The allegations set forth in the Complaint regarding Munro's alleged violations of the anti-fraud provisions of the § 10(b) of the Securities and Exchange Act and Rule 10b-5 promulgated thereunder are that Munro: entered into a secret commission agreement with Cole to sell Energytec stock and working interests in exchange for a portion of the 10% commission (Compl. ¶¶ 15, 233); solicited and sold Energytec stock subscriptions and working interests in varying sums and received broker commissions for the sales without being licensed to do so (*id.* ¶¶ 233-41); that the broker commissions were paid to Munro by checks issued by Energytec which contained one of the following references, "Broker Fee-Debenture," "Broker Fee-Stock Sales," "Acquisition Fee," "Fee," or no reference, and Munro agreed to these various characterizations to misrepresent to Energytec, its auditors and regulators that he was legally entitled to receive broker commissions (*see id.*); and that Munro was paid over $123,000 in illegal commissions, none of which was publicly reported.[3] Cole and Jackson recorded the payments to Munro on Energytec's financial records as lawful

---

[3]In its Response, in describing its allegations against Munro, Energytec states, "As outlined in the Amended Complaint, Mr. Munro also sold unauthorized common shares that contained an option to put the shares purchased at $2.75 back to the company a year later at the price of $3.75.  In addition to including the put option that was not authorized by the Board of Directors, Mr. Munro sold the shares to non-accredited investors even though it was required that sales only be made to accredited investors."  Resp. at 5 (citing Compl. ¶¶ 44-55, 241).  The court has carefully reviewed the cited paragraphs in the Complaint and does not find these allegations against Munro, but only against certain of the other Broker Defendants.  Perhaps in drafting its Response, Energytec mistakenly lumped Munro into this group.

**Memorandum Opinion and Order – Page 4**

commissions and in other ways as "legal costs" that misrepresented Munro's services so that the illegal commission payments would not be discovered by auditors or the Board of Directors.

The Complaint also contains allegations regarding all of the Broker Defendants, namely, that: they had motive and opportunity to engage in securities fraud so that they would receive illegal commission payments (*id.* ¶ 321); they took no steps to correct the false and misleading public filings which represented that no commissions were paid by the company (*id.* ¶¶ 321-22); they held themselves out as knowledgeable experts in the private placement of unregistered securities and then engaged in unlawful conduct (*id.* ¶ 322); that their scheme included participating in the sale of unregistered securities, receiving undisclosed commissions without being duly licensed, and/or causing false and misleading statements to be made in Energytec's public filings and taking no action to correct such false and misleading statements (*id.*); and they breached their "affirmative duty" to correct false information concerning Energytec's sales to investors.  *Id.* ¶ 324.

Plaintiff alleges that as a result of the scheme to defraud, investors have demanded rescission,  and the financial well-being of Energytec and the value marketability of its securities have been diminished by the threat of rescission and the SEC investigation that might result in fines, penalties and a rescission order.  Energytec alleges it has incurred and will continue to incur legal and professional expenses related to the SEC investigation resulting from Defendants' conduct.

## II.    **Applicable Legal Standards**

### A.    **Fed. R. Civ. P. 12(b)(6) Standard**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted."  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which

relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find inferences favorable to the plaintiff and is not to "accept conclusory allegations, unwarranted deductions or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only

determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Lake's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### B.      The Particularity Requirements of Rule 9(b) and Scienter

In pleading a securities fraud violation, a plaintiff must satisfy the requirements of Fed. R. Civ. P. 9(b), which provides that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 564-65 (5th Cir. 2002) (quotations omitted). A dismissal for failure to satisfy the requirements of Rule 9(b) is a dismissal on the pleadings for failure to state a claim pursuant to Rule 12(b)(6). *U.S. Ex. Rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir. 1999) (citing *Shushany v. Allwaste, Inc.* 922 F.2d 517, 520 (5th Cir. 1993)).

A plaintiff pleading a securities fraud violation must also adequately allege scienter which, in relation to securities fraud, is "the intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 546 (5th Cir. 2001); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997). Scienter may be satisfied by proof that the defendant acted with severe recklessness. *See Shushany*, 992 F.2d at 521. Strict intentional misconduct is not necessary; it is sufficient to prove that the conduct in question is an "extreme departure from the ordinary standards of care." *Trust Co. of La.*, 104 F.3d at 1490. "To plead scienter adequately, a plaintiff must set forth specific facts that support an

inference of fraud." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

Under *Tuchman*:

> The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud. Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Id.*

## III.    Analysis

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Munro has moved to dismiss the Sixth Claim for Relief, contending that it fails to state an actionable Section 10(b) primary violation and also because it fails to state a claim under Rule 12(b)(6) in connection with the fraud pleading requirements of Rule 9(b) and the "heightened pleading requirements" of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. Munro also moved to dismiss the Ninth Claim for Relief, common law fraud, contending that Energytec has failed to satisfy the pleading requirements of Rule 9(b). The court will consider these arguments in turn.

### A.    Violations of Section 10(b) of the Exchange Act and Rule 10b-5

Defendant moves to dismiss Energytec's Sixth Claim for Relief, namely, that he violated Section 10(b) of the Exchange Act and Rule 10b-5 in connection with the alleged scheme to defraud. In support of his motion, Defendant contends that Energytec's allegations against him amount to, at most, a claim for "aiding and abetting" securities fraud, which is not actionable under § 10(b) and Rule 10b-5. *See* Def. Mot. at 10. He further argues that Energytec has failed to allege he made any material misrepresentations or omissions tending to make statements made not misleading with

respect to the alleged secret commissions and stock sales, or any other matter.  He also contends that Energytec has failed to allege that he had any affirmative duty to issue or correct any statements made by Energytec on its own behalf.  With regard to Energytec's allegation that Munro's endorsement and cashing of checks issued to him by Energytec "ratified" and "repeated" false representations that he was entitled to receive broker commissions, Munro contends that "it is difficult to imagine how the endorsement of checks issued *by Energytec* could have constituted a material misstatement or omission *to Energytec* particularly when Energytec alleges it had no knowledge of commissions being paid to Munro at all."  Def. Mot. at 11 (original emphasis).  In addition, Defendant contends that even if a primary violation of § 10(b) has been pled, the Sixth Claim for Relief should still be dismissed since Energytec has failed to plead with particularity the circumstances constituting the alleged fraud as required under Fed. R. Civ. P. 9(b), and has failed to allege the requisite scienter.

In response to Munro's motion to dismiss its Sixth Claim for Relief, Energytec contends that it has alleged a primary violation of § 10(b) and Rule 10b-5, and that Defendant "ignores a substantial body of case law holding that parties can state 10b-5 claims without alleging a misrepresentation or material omission."  Resp. at 10 (and cases cited therein).  Relying on these cases, Energytec claims that Munro is primarily liable for his participation in an illegal scheme to defraud, and states that it "does not allege or claim that Munro is a secondary actor who is liable for aiding and abetting others."  *Id.* at 10-11.  Energytec also contends it has more than adequately satisfied the pleading requirements of Rule 9(b) and pleaded the requisite scienter.  Further, in its response, Energytec makes clear that liability against Munro is "not based on Energytec's SEC filings," and that it is not alleging that Munro made statements and/or omissions in Energytec's

**Memorandum Opinion and Order – Page 9**

public filings with the SEC; rather, it is alleging that his fraudulent conduct directly resulted in it making misstatements and/or omissions in its public filings.  Energytec argues that liability is based on Munro's "own active participation in a manipulative scheme to defraud Energytec by illegally selling Energytec's securities to investors and then engaging in a course of conduct to conceal the true nature of his activities from Energytec's Board of Directors."  Resp. at 2.

In resolving the parties' dispute, the court must closely examine recent case law developments concerning the "scheme to defraud" theory of liability and the scope of such liability under § 10(b) of the Securities and Exchange Act and Rule 10b-5.   In pertinent part, § 10(b) of the Exchange Act, as amended, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –
>
> * * *
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78(j)(b) (1934) (amended 2000).  Pursuant to its § 10(b) rulemaking authority, the SEC has adopted Rule 10b-5 which, in relevant part, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud;

**Memorandum Opinion and Order – Page 10**

(b) To make any untrue statement of material fact or
to omit to state a material fact necessary in order to
make the statements made, in light of the
circumstances under which they were made, not
misleading, or;

(c) To engage in any act, practice, or course of business
which operates or would operate as a fraud or deceit upon any
person, in connection with the purchase or sale of any
security.

17 CFR § 240.10b-5 (1996).  As made clear in its Response, Energytec is bringing this lawsuit under

Rule 10b-5(a) and (c), and not under (b).  While Energytec is correct that Rule 10b-5 can, in certain

instances, be violated under subsections (a) and (c) through a "course of business" or a "device,

scheme or artifice," and that a body of case law supports the proposition that parties can state a 10b-

5 violation without alleging a misrepresentation or material omission, a recent Fifth Circuit opinion

has curtailed the use of the "scheme to defraud" theory argued by Energytec in its Response.  *See*

*Regents of the Univ. of California v. Credit Suisse First Boston (USA), Inc.*, ___ F.3d ___, 2007 WL

816518 (5th Cir. March 19, 2007).

In *Regents of the Univ. of California*, the Fifth Circuit reversed the district court's decision

in *In Re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 236 F.R.D. 313 (S.D. Tex.

2006), where the district court had granted an amended motion for class certification filed by the

lead plaintiff in a securities fraud action arising out of allegedly deceptive conduct of several

defendant banks.  The lead plaintiff had alleged that the defendant banks engaged in a series of

transactions with Enron, a publicly traded company, that allowed Enron to temporarily take

liabilities off its books and to book revenue from the transactions which, in actuality, caused it to

incur debt.  The Fifth Circuit held that Enron's banks were at most aiders and abetters and thus did

not have any primary liability under Rule 10b-5.  2007 WL 816518, at *9–13.  In so ruling, the court

relied heavily on an earlier decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), where the Supreme Court confirmed that § 10(b) prohibits only "manipulative or deceptive" devices or contrivances, and that private plaintiffs "may not bring a [Rule] 10b-5 suit against a defendant for acts not prohibited by the text of § 10(b)." 511 U.S. at 173.  Rejecting the contrary position urged by the SEC, the Court held that Rule 10b-5 does not reach those who only aid and abet a violation of § 10(b):

> As in earlier cases considering conduct prohibited by § 10(b), we again conclude that the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act. . . . The proscription does not include giving aid to a person who commits a manipulative or deceptive act.

*Id.* at 177.  The *Central Bank* court added a caveat:

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts.  Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability are met.

*Id.* at 191 (original emphasis).

In reversing the district court, the Fifth Circuit in *Regents of the Univ. of California* focused heavily on the meaning of the term "deceptive act" in § 10(b), and found that the district court's decision (in turn adopting the SEC's position) was premised on an overly broad conception of the term "deceptive act":

> The district court's conception of "deceptive act" liability is inconsistent with the Supreme Court's decision that § 10 does not give rise to aiding and abetting liability. An act cannot be deceptive within the meaning of § 10(b) where the actor has no duty to disclose. Presuming plaintiffs' allegations to be true, Enron committed fraud by misstating its accounts, but the banks only aided and abetted that fraud by engaging in transactions to make it more plausible; they owed no duty to Enron's shareholders.

Section 10(b) does not give rise to aiding and abetting liability. In *Central Bank*, the Court emphasized that securities fraud liability is an area of the law that demands certainty and predictability. Secondary liability brings neither; instead it gives rise to confusion about the extent of secondary actors' obligations and invites vague and conflicting standards of proof in diverse courts. *See Cent. Bank*, 511 U.S. at 188. Unfortunately, the Court has left some uncertainty in this regard.

Though the Court conclusively foreclosed the application of secondary liability under § 10(b), it stated that secondary actors such as investment banks and accountants can be liable as primary violators in some circumstances. The court has never, however, precisely delineated the boundary between primary and secondary liability. As the district court noted, the lower courts have struggled to do so, and our circuit has not previously announced a standard that conclusively governs this case.

Although plaintiffs try to reconcile the cases, the Eighth and Ninth Circuits have split with respect to the scope of primary liability for secondary actors. The district court adopts a rule advocated by the [SEC], in an *amicus curiae* brief before the Ninth Circuit, under which primary liability attaches to anyone who engages in a "transaction whose principal purpose and effect is to create a false appearance of revenues." We agree with the Eighth Circuit that the SEC's proposed test (by which we are not bound) is too broad to fit within the contours of § 10(b).

*Regents of the Univ. of California*, 2007 WL 816518, at *9-10. The court is referring to the Eighth Circuit's decision in *In re Charter Communs., Inc.*, 443 F.3d 987 (8th Cir. 2006), *cert. granted*, 75 U.S.L.W. 3034, 2007 WL 879583 (U.S. March 26, 2007) (No. 06-43), and the Ninth Circuit's decision in *Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1050 (9th Cir. 2006), *petition for cert. filed* (U.S. Oct. 19, 2006) (No. 06-560).

In response to Munro's arguments that Energytec has failed to allege a claim for primary liability under § 10(b) and Rule 10b-5, Energytec relies on the scope of primary liability for secondary actors adopted by the Ninth Circuit in *Simpson*, as well as other cases attaching liability to anyone who engages in a transaction whose principal purpose and effect is to create a false appearance of revenues. *See* Resp. at 10 (and cases cited therein). The Fifth Circuit has clearly

**Memorandum Opinion and Order – Page 13**

rejected the Ninth Circuit's position and adopted the Eighth Circuit's more circumscribed understanding of "deceptive acts."  As stated in *Regents of the Univ. of California*:

> The Eighth Circuit, unlike the Ninth, has correctly taken [earlier Supreme Court decisions] collectively to mean that "'deceptive'" conduct involves either a misstatement or a failure to disclose by one who has a duty to disclose." *Charter*, 443 F.3d at 990.  That court quoted the technical definition of "manipulation" from *Santa Fe* and stated that "any defendant who does not make or affirmatively cause to be made a fraudulent statement or omission, or who does not directly engage in manipulative securities trading practices, is at most guilty of aiding and abetting and cannot be held liable under § 10(b) or any subpart of Rule 10b-5." *Id.* at 992.
>
> . . .
>
> The district court's definition of "deceptive acts" thus sweeps too broadly; the transactions in which the banks engaged were not encompassed within the proper meaning of that phrase.  Enron had a duty to its shareholders, but the banks did not.  The transactions in which the banks engaged at most aided and abetted Enron's deceit by making its misrepresentations more plausible.  The banks' participation in the transactions, regardless of the purpose or effect of those transactions, did not give rise to primary liability under § 10(b).

2007 WL 816518, at *10, *12.

In light of the court's holding in *Regents of the Univ. of California*, the court determines that Energytec has failed to state a claim against Munro under § 10(b) and Rule 10b-5.[4]  Unlike Cole (Energytec's former Chariman, CEO and CFO), Munro had no duty to Energytec, or to its investors, to disclose any information useful in evaluating Energytec's true financial position; nor has Energytec alleged an affirmative duty on his part.  He did not issue any misstatement (or omission) relied upon by Energytec.  The court determines that Energytec's claims are more akin to aiding and

---

[4]Although Energytec may attempt to argue that the Eighth Circuit's decision in *Charter Communications* and the Fifth Circuit's recent decision in *Regents of the Univ. of California* are distinguishable because they involve outside vendors entering into "non-securities transactions" then used by the issuer defendants to mislead shareholders, the court has carefully reviewed the body of case law at issue and concludes that the determinative issue in those cases was not the subject matter of the contracts but whether the allegations reflected that the third party vendor directly issued a material misrepresentation or had a duty to disclose.

abetting of a primary violator, barred by *Central Bank*.  Accordingly, Defendant's motion to dismiss Energytec's Sixth Claim for Relief should be granted.[5]

### B.      Common Law Fraud and Fraudulent Concealment

Defendant also moves to dismiss the Complaint for failure to meet the particularity requirements under Rule 9(b) and for failure to state a common law fraud claim.  Defendant contends that Complaint does not contain the "who, what, where, when and how" allegations generally required in securities fraud cases.  *See Herrmann Holdings,* 302 F.3d at 564-65.  In response, Energytec contends that it has met the particularity requirements. Having carefully considered the Complaint, the allegations as to Munro, and those as to the Broker Defendants, the court determines that this is a close call.  Drawing all inferences and resolving all doubts in favor of Energytec, however, the court determines that the Complaint alleges enough specific facts to support an inference of scienter  under *Tuchman* and satisfies Rule 9(b).  Moreover, as Energytec correctly asserts, the Complaint contains the "who, what, where, when and how" allegations generally required in securities fraud cases.   In close cases such as this, the better practice is to let the complaint stand and consider the adequacy of proof at the summary judgment stage.

In short, having reviewed the allegations in the complaint, the court rejects Defendant's argument that the Ninth Ground for Relief should be dismissed for failure to plead with particularity the circumstances constituting the alleged fraud, as required under Fed. R. Civ. P. 9(b), and for failure to allege the requisite scienter.  Accordingly, Defendant's motion to dismiss on these grounds should be **denied**.

---

[5]In light of the court's decision, the court need not consider Munro's alternative arguments in support of his motion to dismiss, including his contention that Energytec has failed to satisfy the heightened pleading requirement under the PSLRA.

**IV.    Plaintiff's Motion for Leave to File Supplemental Authority in Connection with Pending Motions to Dismiss**

On March 30, 2007, Energytec filed a motion seeking leave of court to file supplemental authority in connection with the various motions to dismiss, specifically, to inform the court that the United States Supreme Court, on March 26, 2007, granted a petition for writ of certiorari in *In re: Charter Communs., Inc.*, *supra*.   *See* 2007 WL 879583.   The court is fully aware of these developments and the divergent views taken by the Eighth Circuit and Ninth Circuit concerning the scope of liability in this type of case under Section 10(b) and Rule 10b-5.   The court, as made clear by this opinion, is also fully aware of the Fifth Circuit's recent decision in *Regents of Univ. of California*, as well as the implications of the Supreme Court's decision to grant certiorari in *In re: Charter Communs., Inc.*   Accordingly, as the supplement would not shed any new light on the topic, the court will deny Plaintiff's Motion for Leave to File Supplemental Authority in Connection with Pending Motions to Dismiss.

**V.    Conclusion**

For the reasons stated herein, the court **grants in part and denies in part** Defendant G. Norman Munro's Motion to Dismiss Plaintiff's First Amended Consolidated Complaint.   The court **grants** Defendant's motion to dismiss the Sixth Claim for Relief, namely, violations of Section 10(b) and Rule 10b-5, and **dismisses** this claim **with prejudice**.   The court **denies** Defendant's motion to dismiss the Ninth Claim for Relief, namely, common law fraud.   Finally, the court **denies** Plaintiff's Motion for Leave to File Supplemental Authority in Connection with Pending Motions to Dismiss.

**It is so ordered** this 31st day of March, 2007.

Sam A. Lindsay
United States District Judge