IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ENERGYTEC, INC.,
a Nevada Corporation,                          §
                                               §
                    Plaintiff,                 §
                                               §   Civil Action No. 3:06-CV-871-L
v.                                             §   (consolidated with Civil Action No.
                                               §   3:06-CV-933-L)
                                               §
PHILIP M. PROCTOR, et al.,                     §
                                               §
                    Defendants.                §


**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Defendant Philip M. Proctor's Motion to Dismiss Plaintiff's First

Amended Consolidated Complaint, filed September 12, 2006; (2) Defendant Cole's Motion to

Dismiss Plaintiff['] s First Amended Consolidated Complaint, filed September 21, 2007; (3) Motion

to Dismiss Plaintiff's First Amended Consolidated Complaint by Defendants Raymond J. Vula and

Alice G. Vula, filed September 24, 2006; and (4) Motion to Dismiss Plaintiff's First Amended

Consolidated Complaint by Defendants John J. Petito, Melvin R. Seligsohn and Sam Miller, filed

September 25, 2006.  After careful consideration of the motions, responses, reply and applicable

authority, the court **grants in part and denies in part** Defendant Philip M. Proctor's Motion to

Dismiss Plaintiff's First Amended Consolidated Complaint; **denies** Defendant Cole's Motion to

Dismiss Plaintiff['] s First Amended Consolidated Complaint; **grants in part and denies in part**

Motion to Dismiss Plaintiff's First Amended Consolidated Complaint by Defendants Raymond J.

Vula and Alice G. Vula; and **grants in part and denies in part** Motion to Dismiss Plaintiff's First

**Memorandum Opinion and Order – Page 1**

Amended Consolidated Complaint by Defendants John J. Petito, Melvin R. Seligsohn, and Sam Miller

## I.       Procedural and Factual Background

This is a securities fraud action brought by Plaintiff Energytec, Inc. ("Plaintiff" or "Energytec") against Frank W. Cole ("Cole"), its former Chairman, Chief Executive Officer and Chief Financial Officer; Josephine Jackson ("Jackson"), Cole's executive assistant; Philip M. Proctor ("Proctor"), a licensed broker; and several unlicensed brokers, including Alice Vula ("Ms. Vula"), Raymond J. Vula ("Mr. Vula"), Sam Miller ("Miller"), John J. Petito ("Petito"), and Melvin R. Seligsohn ("Seligsohn"), many of whom were Cole's friends and business associates.[1] Defendants Proctor, Ms. Vula, Mr. Vula, Miller, Petito, and Seligsohn are referred to herein as the "Broker Defendants."  Energytec seeks to recover monetary damages incurred after the discovery of an allegedly fraudulent scheme perpetrated by Cole, Jackson and the Broker Defendants, whereby the Broker Defendants are alleged to have illegally sold Energytec securities to obtain unauthorized illegal commission payments from Energytec and/or to artificially inflate the price of Energytec's publicly traded securities.

### A.       Energytec's Claims against Cole

Energytec has asserted five causes of action against Cole: (1) violation of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; (2) breach of fiduciary duty;  (3) common law fraud; (4) misappropriation of corporate opportunities; and (5)

---

[1]The remaining defendants are Corrine I. Weseloh and Does 1-100.  *See* Am. Compl. ¶¶ 3-10.  Neither Weseloh nor Jackson has filed a motion to dismiss.  Cole's motion to dismiss does contain repeated references to "Defendants Cole and Jackson," however, the majority of his motion discusses Energytec's securities claim that has only been asserted against him, and the motion is styled as "Defendant Cole's Motion to Dismiss Plaintiff[']s First Amended Consolidated Complaint."

interference with economic relations. Pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Cole moves to dismiss all claims brought against him.

### B.  Energytec's Claims against the Broker Defendants

Energytec has asserted three claims against all of the Broker Defendants: (1) violation of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; (2) violation of Texas securities laws; and (3) common law fraud-fraudulent concealment. Energytec has asserted a claim against all of the Broker Defendants except Proctor for violation of section 15(a) of the Securities and Exchange Act of 1934. Finally, Energytec has asserted a claim of interference with economic relations against Petito, Seligsohn, and Mr. Vula. Pursuant to Rule 12(b)(6), Proctor has moved to dismiss all claims brought against him. Mr. Vula and Ms. Vula have moved to dismiss all claims brought against them pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and the PSLRA. Petito, Miller, and Seligsohn have moved to dismiss all claims brought against them pursuant to Rules 12(b)(6) and 9(b).

### C.  Factual Background

As set forth in the next section, for purposes of a motion to dismiss, the court assumes all well-pleaded facts in the First Amended Complaint ("Complaint") to be true. The Complaint alleges that Cole formed Energytec in July 1999 for the purpose of engaging in oil and gas producing activities. Compl. ¶ 24. As part of these activities, Energytec and its investors hold "working interests in certain oil and gas properties located in Texas and Wyoming." *Id.* ¶ 24. From July 1999 through March 2006, Cole served as Chairman, Chief Executive Officer and Chief Financial Officer for Energytec. *Id.* ¶ 25. During that time, Jackson served as his executive assistant. *Id.* Cole and

Jackson controlled Energytec's bank accounts and financial records. *Id*. ¶ 70. Energytec alleges

that at some point in time it discovered unlawful acts in violation of state and federal securities laws

by Cole, Jackson and the Broker Defendants. *Id*. ¶ 26. On March 18, 2006, Energytec's Board of

Directors removed Cole as Chairman, CEO and CFO of Energytec, and removed Jackson from her

position. *Id*. ¶ 27.

With regard to the details of the alleged scheme, Plaintiff alleges:

> This case involves a rogue CEO, CFO and Chairman of a publicly traded
> company – Mr. Cole – who, with the direct participation of a group of unregistered
> and thus unregulated brokers and others, developed a scheme to raise millions of
> dollars very quickly from numerous investors, including small and unsophisticated
> investors, in numerous states. The scheme could not have succeeded without Mr.
> Cole's concealment of the scheme and related actions from[:] the Board of Directors,
> the SEC, and the Company's auditors, and could not have succeeded without the
> active participation and knowledge of the other Defendants.

> The heart of the scheme was that although individual investors were making
> an investment in oil wells, and properly should have been paid profits or losses based
> on the actual performance of the individual wells in which they invested (i.e.,
> whether it was a producing or non-producing well), Mr. Cole instead arranged for
> each investor to be paid a "profit" that exactly matched pre-investment projections
> given to investors, regardless of the performance of the individual wells in which
> each person invested. Mr. Cole arranged for the payments to the investor in this way
> so the investor would believe the investment was an easy and risk-free return on the
> oil well investment. The investor would then be more likely to purchase more
> working interests and tell his or her friends, family and colleagues about the
> opportunity, and the easy money to be had.

> The other Defendants knew about this guaranteed "profit" scheme and, in
> fact, working with Mr. Cole developed the scheme and the manner in which it was
> sold. The Broker Defendants were the marketing department for the scheme, and
> directly solicited the investors to put their money into this *Ponzi*-like scheme, where
> new investor money was used to pay early investors phony "profits." [ . . .]

> The motive for this scheme was simple greed. Mr. Cole and other defendants
> held substantial shares of stock in the Company, and the Broker Defendants were
> paid millions of dollars in illegal commissions to act as the sales team for this *Ponzi*-
> like scheme. As the volume and dollars invested in the Company grew, the value of
> Mr. Cole's holdings in the Company and the holdings of other defendants grew.

**Memorandum Opinion and Order – Page 4**

*Id.* ¶¶ 15-18.  Having set forth Energytec's allegations regarding the nature of the alleged scheme to defraud, the court now looks more specifically at the allegations against the moving defendants.

### 1.      Allegations against Cole

In addition to the allegations regarding the scheme as outlined above, the Complaint also includes various other allegations against Defendant Cole.  Specifically, Energytec has alleged that Cole, with Proctor and Jackson, established a scheme whereby Proctor sold working interests to investors located by Proctor, who was paid commissions.  Compl. ¶ 29.  Energytec alleges that the scheme expanded in January 2002 with the addition of Mr. Vula, and ultimately included all of the Broker Defendants.  *Id.* ¶¶ 29-30.  Energytec has alleged that Cole knew or had reason to know that many of the individuals purchasing working interests and/or stock were unaccredited investors.  *Id.* ¶ 31.  The Complaint maintains that Cole kept the sales, the nature of the investors, and the commissions paid to the Broker Defendants secret from Energytec and that he represented that the sales were legal, and the Complaint identifies eleven specific instances of omissions by Cole to the Energytec board of directors.  *Id.* ¶ 32.  The secret commission agreements ultimately resulted in the payment of more than $7 million to the Broker Defendants, payments that were usually not described as commissions to brokers, but rather as "consulting services," "legal fees," or "acquisition fees."  *Id.* ¶ 34.  On at least two occasions, as alleged by Energytec, Cole was informed by an Energytec employee that these commission payments were unlawful.  *Id.* ¶¶ 53, 60.  Nevertheless, Cole, with Jackson, allegedly issued the checks to the Broker Defendants.  *Id.*

Energytec has made multiple allegations of public misrepresentations by Cole.  Energytec alleges that Cole caused several false reports to be filed with the SEC on behalf of the company, including certain Form Ds, Form 10s, Form 10-Qs, certifications under section 302 of the Sarbanes-

Oxley Act of 2002, as well as misstatements in the books and records of Energytec . *Id*. ¶¶ 56-63, 96-100.  Other allegations against Cole include the laundering and removal of restrictive stock legends on certain Energytec stock.  *Id*. ¶¶ 85-89.

Cole also allegedly acted independently with regard to certain oil fields and drilling plans, violating the rules and regulations of the Texas Railroad Commission.  *Id*. ¶¶ 74-84.  Specifically, Cole allegedly prepared false, unreliable, and misleading reserve reports that were relied upon by investors.  *Id*.  Energytec alleges that these reports have cost the company millions in regulatory compliance costs and expenses.  *Id*. ¶ 82.  Cole allegedly also sold working interests in certain oil and gas properties that were secured by a loan to Energytec.  *Id*. ¶¶ 90-93.

The Complaint also sets out numerous acts by Cole with respect to the involvement of the Broker Defendants in the scheme.  *Id*. ¶¶ 109-274.   For these acts, Energytec has alleged that Cole and the individual Broker Defendant agreed to conceal the use of an unlicensed broker in order to induce Energytec to approve the sales of working interests and stock.  *Id*.

Finally, the Complaint sets forth allegations of continued misdeeds by Cole after his employment with Energytec was terminated.   Cole has not resigned his director position at Energytec and has allegedly failed to offer certain acquisition and development opportunities to Energytec.  *Id*. ¶¶ 275-278.  Moreover, Energytec alleges that Cole has interfered with Energytec's ongoing business by setting up new entities to solicit Energytec's customers, and has communicated with the owners of the disputed working interests and Energytec stock, making misrepresentations about his termination from employment and the outstanding working interests.  *Id*. ¶¶ 279-288.

**Memorandum Opinion and Order – Page 6**

### 2. Allegations against the Broker Defendants

The Complaint also contains allegations regarding all of the Broker Defendants, namely, that: they had motive and opportunity to engage in securities fraud so that they would receive illegal commission payments; they took no steps to correct the false and misleading public filings which represented that no commissions were paid by the company; they held themselves out as knowledgeable experts in the private placement of unregistered securities and then engaged in unlawful conduct; that their scheme included participating in the sale of unregistered securities, receiving undisclosed commissions without being duly licensed, and/or causing false and misleading statements to be made in Energytec's public filings and taking no action to correct such false and misleading statements; and they breached their "affirmative duty" to correct false information concerning Energytec's sales to investors.  *Id.* ¶¶ 321-324.

### a. Proctor

As to Proctor, Energytec has alleged that Proctor is a licensed broker who played an initial role in the scheme to pay unlicensed brokers commissions for sales of working interests and stock in Energytec.  *Id.* ¶¶ 29, 198.  Specifically, Proctor is alleged to established the scheme with Cole and Jackson in May 2000, and is alleged to have benefited by received substantial commissions.  *Id.*  Energytec also alleges that Proctor was issued Energytec stock on several occasions.  *Id.* ¶ 32, 199.  Proctor is alleged to have acted as a broker without disclosing his activities to the broker-dealer firm with which he was associated.  *Id.* ¶¶ 57, 200-201.

Proctor is also alleged to have sold working interests in Energytec on several occasions between May 2000 through July 2005.  *Id.* ¶¶ 202-231.  For these sales, Proctor allegedly received commission checks from Energytec, which included memo lines describing the payments as

"acquisition fees," " Purchase of Parr Oil & Gas Lease," "legal fees," consulting services," "legal services debenture," "debentures," "corporate financial advice," or with a blank memo line. *Id*. For several of these transactions, Proctor is alleged to have provided Energytec with invoices misrepresenting his services. *Id*. ¶¶ 216-218, 220, 225-227, 229. Energytec alleges that Proctor agreed with Cole and Jackson to characterize his payment in these ways to conceal the fact that he was being paid broker commissions, and that Proctor ratified these misrepresentations by signing and cashing the checks. *Id*. ¶¶ 202-231.

### b.    Mr. Vula

Mr. Vula is alleged to have joined the scheme to market and sell Energytec securities in January 2002; Energytec alleges that he is not a licensed broker-dealer, but joined in the efforts of Cole, Jackson, and Proctor to sell working interests and/or stock in Energytec to investors in exchange for receiving substantial commissions for the sales. *Id*. ¶¶ 29, 109. Energytec claims that Mr. Vula, with Cole and Jackson, schemed to keep the unlicensed sales secret. *Id*. ¶ 32. Mr. Vula is also alleged to have recruited other unlicensed broker-dealers, including Miller, Seligsohn, Petito, and Ms. Vula, to join in the scheme to solicit and sell Energytec securities. *Id*. ¶¶ 30, 109, 114, 131, 152.

Mr. Vula and Cole allegedly entered into a written commission agreement dated January 23, 2002, which stated that Mr. Vula was entitled to 10 percent commission of any money he raised for Energytec. *Id*. ¶ 110. In a separate agreement dated August 25, 2002, Mr. Vula and Cole agreed that for sales made by brokers recruited by Mr. Vula, he would receive a 3 percent commission and the other broker would receive a 7 percent commission. *Id*. ¶ 110. A third written agreement between Cole and Mr. Vula provided Mr. Vula with working interests in Energytec as compensation

for working interests sold by Mr. Vula. *Id.* The total amount of commissions received by Mr. Vula between 2002 and 2006 was $4,953,008.18. *Id.*

Specifically, Mr. Vula is alleged to have been involved in the November 2005 subscription agreement whereby Energytec sold common stock, and he allegedly knew that the potential investors were not accredited investors. *Id.* ¶¶ 46-47. He is alleged to have suggested using larger print for the offering for "senior clients." *Id.* ¶ 46. The Complaint also outlines commissions received by Mr. Vula between January 2002 and January 2006. *Id.* ¶¶ 111-151. For these sales, Mr. Vula allegedly received commission checks from Energytec, which included memo lines describing the payment as "acquisition costs," "acquisition fees," and "commission on stock sales." *Id.* For several of these transactions, Mr. Vula is alleged to have been involved in drafting the documents that were used to solicit investors and that were never approved by the Energytec Board of Directors. *Id.* ¶¶ 116, 119. Energytec alleges that Mr. Vula agreed with Cole and Jackson to mischaracterize his payment to conceal the fact that he was being paid broker commissions, and that Mr. Vula ratified these misrepresentations, including misrepresentations on Form 8-Ks filed by Energytec with the SEC, by signing and cashing the checks. *Id.* ¶¶ 111-151.

Energytec also alleges that Mr. Vula has taken other actions damaging to Energytec since the firing of Cole and Jackson. Mr. Vula, with Cole, Petito, and Seligsohn, allegedly has created new entities to solicit the current owners of Energytec working interests to terminate their relationships with an Energytec subsidiary and has met with Energytec stockholders and owners of working interests *Id.* ¶ 279. Energytec alleges that Mr. Vula and others have communicated with the owners of the disputed working interests and Energytec stock, making misrepresentations about Cole's termination from employment and the outstanding working interests. *Id.* ¶¶ 279-288.

### c.      Ms. Vula

Ms. Vula is also alleged to have been part of the scheme to sell Energytec securities despite being an unlicensed broker-dealer; she, like her husband, is alleged to have entered into a secret commission agreement with Cole, agreeing to sell working interests and stock in Energytec in return for a 10 percent commission. *Id*. ¶ 152. The Complaint outlines her sales between June 2002 and January 2006. *Id*. ¶¶ 153-155. For these sales, Ms. Vula allegedly received commission checks from Energytec. *Id*. Energytec alleges that Ms. Vula agreed with Cole and Jackson to leave the memo line of these commission checks blank to conceal the fact that she was being paid broker commissions, and that Ms. Vula ratified these misrepresentations, including misrepresentations on Form 8-Ks filed by Energytec with the SEC, by signing and cashing the checks. *Id*.

### d.      Miller

Miller, an unlicensed broker-dealer, was allegedly recruited to join the scheme to sell Energytec securities by Mr. Vula, and also allegedly entered into a secret commission agreement for a 10 percent commission on the working interests and stock he sold. *Id*. ¶¶ 114, 156-157. The Complaint outlines commissions received by Miller between August 2002 and January 2006. *Id*. ¶¶ 158-173. For these sales, Miller allegedly received commission checks from Energytec, which included memo lines describing the payments as "acquisition costs," "acquisition fees," and "commission on stock sales." *Id*. Energytec alleges that Miller agreed with Cole and Jackson to characterize his payment in these ways to conceal the fact that he was being paid broker commissions, and that Miller ratified these misrepresentations, including misrepresentations on Form 8-Ks filed by Energytec with the SEC, by signing and cashing the checks. *Id*.

### e.    Seligsohn

Seligsohn, an unlicensed broker-dealer, was allegedly recruited to join the scheme to sell Energytec securities by Mr. Vula, and also allegedly entered into a secret commission agreement for a 10 percent commission on the working interests and stock he sold.  *Id*. ¶¶ 114, 174-175.  As part of this scheme, Seligsohn allegedly posted a solicitation for a put option for Energytec shares on an internet message board in November 2005.  *Id*. ¶¶ 48, 197.  Energytec alleges that this was a public offering that destroyed its registration exemption.  *Id*.

The Complaint outlines commissions received by Seligsohn between September 2002 and January 2006.  *Id*. ¶¶ 176-197.  For these sales, Seligsohn allegedly received commission checks from Energytec, which included memo lines describing the payments as "acquisition costs," "acquisition fees," and "commission on stock sales."  *Id*.  Energytec alleges that Seligsohn agreed with Cole and Jackson to characterize his payment in these ways to conceal the fact that he was being paid broker commissions, and that Seligsohn ratified these misrepresentations, including misrepresentations on Form 8-Ks filed by Energytec with the SEC, by signing and cashing the checks.  *Id*.

Energytec also alleges that Seligsohn has taken other actions since the firing of Cole and Jackson.  Seligsohn, with Cole, Petito, and Mr. Vula, allegedly has created new entities to solicit the current owners of Energytec working interests to terminate their relationships with an Energytec subsidiary and has met with Energytec stockholders and owners of working interests  *Id*. ¶ 279.  Energytec alleges that Seligsohn and others have communicated with the owners of the disputed working interests and Energytec stock, making misrepresentations about Cole's termination from employment and the outstanding working interests.  *Id*. ¶¶ 279-288.

**Memorandum Opinion and Order – Page 11**

### f.      Petito

Petito, an unlicensed broker-dealer, was allegedly recruited to join the scheme to sell Energytec securities by Mr. Vula, and also allegedly entered into a secret commission agreement for a 10 percent commission on the working interests and stock he sold.  *Id*. ¶¶ 131, 242.  As part of this scheme, and to avoid the fact that many of the investors recruited by the Broker Defendants were not accredited investors, Petito allegedly hatched another scheme whereby individual, unaccredited investors purchased Energytec securities through various limited liability companies. *Id*. ¶ 41. Petito, a certified public accountant, allegedly offered his clients to Cole as potential Energytec investors.  *Id*. ¶ 242.  Petito has also allegedly acknowledged the nature of the investors solicited by him, including widows, disabled persons, those who live on social security, those with annual incomes below $50,000, and those who live on monthly checks.  *Id*. ¶ 43.

The Complaint outlines commissions received by Petito between September 2003 and January 2006.  *Id*. ¶¶ 244-262.  For these sales, Petito allegedly received commission checks from Energytec, which included memo lines describing the payments as "acquisition fees."  *Id*.  Petito also received commissions in the form of credits towards his purchase of Energytec working units. *Id*. ¶¶ 246-248.  Petito is alleged to have provided Energytec with invoices from his CPA firm misrepresenting his services as accounting services.  *Id*. ¶¶ 254-255.  Energytec alleges that Petito agreed with Cole and Jackson to mischaracterize his payment to conceal the fact that he was being paid broker commissions, and that Petito ratified these misrepresentations, including misrepresentations on Form 8-Ks filed by Energytec with the SEC, by signing and cashing the checks.  *Id*.

Energytec also alleges that Petito has taken other actions since the firing of Cole and Jackson. Petito, with Cole, Seligsohn, and Mr. Vula, allegedly has created new entities to solicit the current owners of Energytec working interests to terminate their relationships with an Energytec subsidiary and has met with Energytec stockholders and owners of working interests *Id.* ¶ 279. Energytec alleges that Petito and others have communicated with the owners of the disputed working interests and Energytec stock, making misrepresentations about Cole's termination from employment and the outstanding working interests. *Id.* ¶¶ 279-288.

### 3.    Energytec's Alleged Damages

Plaintiff alleges that as a result of the scheme to defraud, investors have demanded rescission, and the financial well-being of Energytec and the value marketability of its securities have been diminished by the threat of rescission and the SEC investigation that might result in fines, penalties, and a rescission order. *Id.* ¶¶ 101-108. Rescission alone could ultimately cost Energytec in excess of $50 million. *Id.* ¶ 106. Energytec alleges it has incurred and will continue to incur legal and professional expenses related to the SEC investigation resulting from Defendants' conduct. *Id.* ¶¶ 101-104. Energytec has alleged that a result of the scheme, which included advance payments to investors based upon profit projections rather than the actual production of certain oil wells, it has paid investors $9 million more than they were actually entitled to receive. *Id.* ¶¶ 64-68, 105.

## II.    Applicable Legal Standards

### A.    Rule 12(b)(1) Standard

A federal court has subject matter jurisdiction over cases "arising under" the Constitution, laws, or treaties of the United States, or in cases where the matter in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. 28 U.S.C. §§

1331, 1332.   Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.; Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.), *cert. denied*, 534 U.S. 1127 (2002); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).  All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

**B.     Rule 12(b)(6) Standard**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find

inferences favorable to the plaintiff and is not to "accept conclusory allegations, unwarranted deductions or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim.  *United States ex rel. Riley v. St. Lake's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### C.      The Particularity Requirements of Rule 9(b) and Scienter

In pleading a securities fraud violation, a plaintiff must satisfy the requirements of Fed. R. Civ. P. 9(b), which provides that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.,* 302 F.3d 552, 564-65 (5th Cir. 2002) (quotations omitted).  A dismissal for failure to satisfy the requirements of Rule 9(b) is a dismissal on the pleadings for failure to state a claim pursuant to Rule 12(b)(6).  *U.S. Ex. Rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir. 1999) (citing *Shushany v. Allwaste, Inc.* 922 F.2d 517, 520 (5th Cir. 1993)).

A plaintiff pleading a securities fraud violation must also adequately allege scienter which, in relation to securities fraud, is "the intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 546 (5th Cir. 2001); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997).  Scienter may be satisfied by proof that the defendant acted with severe recklessness.  *See Shushany*, 992 F.2d at

521. Strict intentional misconduct is not necessary; it is sufficient to prove that the conduct in question is an "extreme departure from the ordinary standards of care." *Trust Co. of La.*, 104 F.3d at 1490. "To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Under *Tuchman*:

> The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud. Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Id.*

## III.     Analysis

### A.     Subject Matter Jurisdiction

Defendants Cole, Mr. Vula, and Ms. Vula[2] argue that the court should dismiss the claims against them pursuant to Rule 12(b)(1), and appear to argue that Plaintiff does not have standing to sue them because its federal securities claim fails under Rules 12(b)(6) and 9(b) and the PSLRA. The court determines that this in an improper Rule 12(b)(1) challenge: "Subject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim." *Loque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002), *cert. denied*, 540 U.S. 812 (2003); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").

---

[2]Defendants Petito, Miller, and Seligsohn have moved separately to dismiss and do not assert Rule 12(b)(1) as a ground for dismissal. They do, however, "join" the motion of Mr. Vula and Ms. Vula. Petito, Miller, and Seligsohn Mot. at 1 n.1. Because the court denies the Vula motion insofar as it raises a subject matter jurisdiction challenge to the Complaint, any incorporation of this argument by Petito, Miller, and Seligsohn is also **denied**.

**Memorandum Opinion and Order – Page 17**

Plaintiff has adequately pleaded federal causes of action to confer subject matter jurisdiction. Accordingly, the court denies defendants Cole, Mr. Vula, and Ms. Vula's motions to dismiss pursuant to Rule 12(b)(1), and turns to the arguments that the Complaint fails to state a claim.

### B.     Violations of Section 10(b) of the Exchange Act and Rule 10b-5

Energytec must allege the following elements to succeed on its securities fraud claims: "(1) a material misrepresentation or omission by the defendant, (2) scienter on the part of the defendant, (3) reliance, and (4) due diligence by the plaintiff to pursue his or her own interest with care and good faith." *Regents of the Univ. of California v. Credit Suisse First Boston (USA), Inc.*, ___ F.3d ___, 2007 WL 816518, *6 (5th Cir. Mar. 19, 2007) (quoting *Unger v. Amedisys, Inc.*, 401 F.3d 316, 322 n.2 (5th Cir. 2005)).  In addition, "[a] plaintiff must prove not only that the fraud occurred but that it proximately caused his losses."  *Id.* (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

The moving defendants move to dismiss Energytec's First and Sixth Claims for Relief, namely, that they violated section 10(b) of the Exchange Act and Rule 10b-5 in connection with the alleged scheme to defraud.  Cole argues that Energytec has failed to establish "loss causation" with respect to his alleged actions causing any loss to Energytec, that Energytec has failed to allege reliance on the SEC filings regarding commission payments, and that the other alleged misrepresentations have not been pleaded with specificity.  Proctor argues that Energytec's section 10(b) claim amounts to, at most, a claim for "aiding and abetting" securities fraud, which is not actionable under section 10(b) and Rule 10b-5.  He further argues that Energytec has filed to satisfy the "in connection with" requirement of a section 10(b) claim, that Energytec's allegations fail to establish scienter, that Energytec has inadequately pleaded loss, and that the section 10(b) claim is

time-barred, in part. The remaining moving Broker Defendants– Mr. Vula, Ms. Vula, Petito, Seligsohn, and Miller – argue that the section 10(b) claims against them should be dismissed because Energytec has failed to allege actionable misrepresentations by them, that Energytec has failed to establish that they had any duty to disclose, and that the participation in the scheme by Cole precludes their liability.

### 1.    Primary v. Secondary Liability

The court, by a memorandum opinion and order entered on March 31, 2007 and incorporated herein, has examined at length the issue of whether secondary actors such as the Broker Defendants may be found liable under section 10(b). This court concluded that in light of the Fifth Circuit Court of Appeal's recent decision in *Regents of the University of California*, Energytec has failed to state a claim against one of the Broker Defendants – Munro– under section 10(b) and Rule 10b-5. Like Munro, based upon the court's prior holdings in this case, Mr. Vula, Ms. Vula, Petito, Seligsohn, Miller, and Proctor had no duty to Energytec, or to its investors, to disclose any information useful in evaluating Energytec's true financial position, nor has Energytec alleged an affirmative duty on their part. The court determines that Energytec's claims against the moving Broker Defendants are more akin to aiding and abetting of a primary violator, claims barred by *Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994). Accordingly, the moving Broker Defendants' motions to dismiss Energytec's Sixth Claim for Relief should be **granted**.

This same analysis, however, does not hold true for Defendant Cole. Cole, the former CEO, CFO, and Chairman of Energytec, not only had a duty to the company, but Energytec has adequately alleged omissions by Cole as a primary violator that state a claim under section 10(b) and Rule 10b-5. Energytec has alleged that Cole owed the company a fiduciary duty and that he had a duty to

correct the misrepresentations and omissions he made to Energytec.  Compl. ¶¶ 292, 296-300.

Energytec has also alleged with specificity the omissions made by Cole to the board of directors of

Energytec, and the resulting misstatements in the SEC filings made by Energytec.  *Id.* ¶¶ 32, 56-63.

Courts have allowed section 10(b) claims such as this, involving a corporate officer who

allegedly made relevant omissions to his company.  "The fact that the fraud was perpetrated by an

officer [of the same corporation that sold the securities] and his outside collaborators is irrelevant

to our problem.  For § 10(b) bans the use of any deceptive device in the 'sale' of any security by 'an

person'."  *Superintendent of Ins. of New York v. Bankers Life and Cas. Co.*, 404 U.S. 6, 10 (1971).

Moreover, in that case, the Supreme Court quoted the Fifth Circuit and found that a section 10(b)

claim existed:

> When a person who is dealing with a corporation in a securities transaction denies
> the corporation's directors access to material information known to him, the
> corporation is disabled from availing itself of an informed judgment on the part of
> its board regarding the merits of the transaction.  In this situation the private right of
> action recognized under Rule 10b-5 is available as a remedy for the corporate
> disability.

*Id.* at 13 (quoting *Shell v. Hensley*, 430 F.2d 819, 827 (5th Cir. 1970)).  Accordingly, Energytec's

claim against Cole survives because Cole was a primary violator, and the corporation has a remedy

under section 10(b).

### 2.    Loss Causation

Cole also argues that Energytec's securities claim should be dismissed for its failure to allege

that his actions caused any harm to the company, and argues that this failure to allege injury also

defeats Energytec's standing to bring this claim.  Specifically, Cole argues that Energytec benefited

from his alleged actions, that any damages alleged by Energytec are speculative, and that Energytec

is not entitled to consequential damages.

**Memorandum Opinion and Order – Page 20**

The court determines that Cole's arguments are unpersuasive.  Though Energytec does plead that the sales of stock and working interests were "on behalf of Energytec," it has also pleaded that Energytec has paid investors recruited by Cole and the Broker Defendants $9 million more than they were entitled to receive, that it has incurred legal and professional expenses related to the SEC investigation, and that rescission could cost the company more than $50 million.  Compl. ¶¶ 64-68, 101-108.  Thus any influx of cash by Cole's actions is more than offset by the consequences of the allegedly illegal sales.

The court next determines that Energytec's damages, as pleaded, are not speculative and that consequential damages are permitted under section 10(b) and Rule 10b-5.  Energytec has pleaded that investors have demanded and/or threatened rescission as a result of the transactions, and has further pleaded that the actions of Cole have damaged its ability to conduct its normal business.  *Id.* ¶¶ 105, 108.  Energytec alleges that it has been damaged because it has had to conduct an internal investigation and report the allegations to the SEC,  incurring attorneys' and other professionals' fees.  *Id.* ¶¶ 103-104.  These damages are recoverable by Energytec:

> [I]t is well-settled that Rule 10b-5 allows recovery of both general and special (consequential) damages.  Special damages are defined as outlays attributable to the defendant's wrongful conduct.  Two limits exist on the recovery of special damages: (1) they cannot be awarded if their relationship to the defendant is too remote; (2) they are unavailable if they redress the same injury for which the plaintiff is compensated by general damages or prejudgment interest.

*Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir. 1982), *cert. denied*, 464 U.S. 920 (1983).  The damages pleaded by Energytec are neither remote to Cole's actions nor redressable by other damages measures.  Energytec has specifically pleaded that it has incurred costs upon the discovery of the scheme involving defendant Cole.  Compl. ¶¶ 101-108.  The court finds that Cole's arguments that Energytec's damages depend on the outcome of other litigation are also incorrect; Energytec

has allegedly been damaged already by the actions by Cole, and accordingly the alleged damages are not speculative.

### 3.    Reliance

Next, Cole argues that Energytec's claim fails because it has not alleged that Energytec relied on any misrepresentation by Cole in the SEC filings made by Energytec.  This argument is also unavailing; Energytec's claims against Cole are based on more than the SEC filings.  Energytec has also pleaded that Cole made repeated omissions to the Energytec board of directors and that his actions were part of an ongoing scheme to prevent the board from learning that the brokers recruited by him and others were selling securities to unaccredited investors by brokers that, for the most part, were unlicensed.  Energytec has satisfied the reliance element of a section 10(b) claim because of Cole's ongoing scheme to keep the board of directors from learning the truth.

### 4.    Specificity of Energytec's Allegations

Finally, Cole argues that the section 10(b) claim against him must be dismissed for failure to plead with the specificity required by Rule 9(b) and the PSLRA, specifically arguing that Energytec has failed to allege when misrepresentations were made, that unaccredited investors bought Energytec securities, that Jackson and Cole are not alleged to have made any misrepresentations to investors about advance payments, and that Jackson and Cole are not alleged to have made misrepresentations with respect to the put option.  In addition, Cole argues that he was authorized by the board of directors for certain sales of Energytec securities.

The court determines that Energytec has satisfied Rule 9(b) and the PSLRA; the Complaint is specific and detailed with regard to Energytec's allegations against Cole that underlie its section 10(b) claim.  Energytec has specifically pleaded the various omissions Cole made to the Energytec

board of directors, the misstatements in SEC filings signed by Cole, and Cole's role in creating the scheme to use unlicensed brokers to sell to unaccredited investors and his efforts to keep the scheme secret from the company.  As the Fifth Circuit Court of Appeals has noted, "the plaintiff[] need not allege all facts that may be related to [its] claims, since such a requirement is impossible at the pleading stage because, in nearly every securities fraud case, only defendants know all the facts related to the alleged fraud." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 354, *reh'g and reh'g en banc denied*, 45 Fed. Appx. 327 (5th Cir. 2002) (internal quotations omitted).  Here, Energytec has pleaded the facts now known to it with regard to Cole's actions, and these allegations satisfy both Rule 9(b) and the PSLRA.  Accordingly, the court **denies** Cole's motion to dismiss the securities fraud claim against him.

### B.      Violations of Section 15(a) of the Exchange Act

Energytec has asserted a claim for violation of section 15(a) of the Exchange Act against the Broker Defendants, with the exception of Proctor, the only Broker Defendant alleged to be a licensed broker-dealer.  Compl. ¶¶ 328-332**.**  Energytec's claim asserts its right to rescind the commission agreements and seeks repayment of the allegedly illegal commissions paid to the Broker Defendants.

Section 15(a) of the Exchange Act, 15 U.S.C. § 78o, makes it unlawful for any "broker or dealer" to "make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to indue the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance" with the section.  15 U.S.C. § 78o(a)(1).  Section 29(b) provides, "(e)very contract made in violation of any provision of [the Act] . . ., and every contract . . . the performance of which involves the violation of . . . any provision of (the Act) . . .,

shall be void . . . as regards the rights of any person who, in violation of any such provision . . . shall have made or engaged in the performance of any such contract . . . ."  15 U.S.C. § 78cc(b).  The Fifth Circuit Court of Appeals has recognized that a private right of action exists under section 29(b):

> a person can avoid a contract under section 29(b) if he can show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the Act was designed to protect.

*Regional Props., Inc. v. Fin. and Real Estate Consult. Co.*, 678 F.2d 552, 559 (5th Cir. 1982) (internal quotations omitted).

The moving Broker Defendants do not dispute that Energytec can bring such a claim; rather, they argue that the claim should be dismissed because Energytec is not entitled to be repaid the commissions paid to the Broker Defendants.  While the Fifth Circuit in *Regional Properties* found that courts "nearly always" denied restitution of fees paid to unlicensed brokers, it also set out a balancing test to determine when a court may allow for restitution:

> The fact that public policy embodied in the securities laws prohibits enforcement of the contract is not alone a sufficient reason to allow even an innocent party to retain an unjust enrichment at the expense of a culpable one.  Resolution of the problem must be found in a balance of the factors in a specific case: the extent of the enrichment and the degree of unjustness wrought by its retention weighed against the policy against enforcement, the extent of the non-violator's participation, and whether a judgment depriving the violator of the benefits received will subvert the policy underlying the rule of law that makes the transaction illegal.

*Id*. at 564 (internal citations omitted).  Since the *Regional Properties* decision, some courts have held that a plaintiff bringing a section 29(b) claim may be entitled to "restitution in the amount he can prove [the defendant] to have been unjustly enriched."  *Prudential-Bache Secs., Inc. v. Cullather*, 678 F. Supp. 601, 607 (E.D. Va. 1987).

**Memorandum Opinion and Order – Page 24**

Here, the Broker Defendants are alleged to have been part of a scheme to sell securities to unaccredited investors, a scheme which has allegedly made Energytec overpay $9 million to these investors, at least some of whom have demanded rescission.  Compl. ¶¶ 64-68, 105, 321-324.  The court is mindful of the facts before the appellate court in *Regional Properties*, where it noted that, "[b]ecause he has done the work promised, the unlicensed person who received the fee is not unjustly enriched.  The person who paid his fee has received actual services.  The law, therefore, leaves the parties where it found them."  678 F.2d at 564.  The court finds that the situation in this case is distinguishable and therefore Energytec may be entitled to restitution in the amount it can prove the Broker Defendants were unjustly enriched, and for that reason, **denies** the Broker Defendants' motion to dismiss the section 15(a) claims against them.

### C.      State Law Claims

The court has determined that Energytec has stated federal claims against Cole and the Broker Defendants, with the exception of Proctor; however, the court may exercise its supplemental jurisdiction over state claims that it finds are "so related to claims in the action . . . that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Accordingly, the court now considers defendants' various motions for the dismissal of Energytec's state law claims.

Cole has moved to dismiss Energytec's claims for breach of fiduciary duty, common law fraud, misappropriation of corporate opportunities, and interference with economic relations.  His motion is premised on the notion that the court has dismissed the federal securities claim against him.  Because the court has found that Energytec has stated a claim with respect to its federal claim

against him, and because Cole offers no other arguments for the dismissal of these claims, the court **denies** his motion with respect to the state law claims.[3]

Defendants Petito, Seligsohn, and Mr. Vula have moved to dismiss Energytec's claim for interference with economic relations against them, but their motion focuses only on the court's supplemental jurisdiction after any federal claims have been dismissed.  Because Defendants have not made any additional arguments, and the court will exercise supplemental jurisdiction over the state law claims, their motion to dismiss the interference with economic relations claim is **denied**.

The remaining claims, to which Defendants have made additional arguments for dismissal, are Energytec's claims against all the Broker Defendants for violation of Texas securities law and common law fraud and fraudulent concealment.  The court considers these claims, and the Defendants' arguments for dismissal, in turn.

### 1.      Violation of Texas Securities Laws

Energytec has brought claims for violation of the Texas securities laws against the Broker Defendants.  They now move to dismiss the claim, arguing that the Texas law only allows a claim by someone in privity to the sale, and that because Energytec did not buy any securities from the Broker Defendants, this claim must be dismissed.

The Texas Securities Act ("TSA") limits who may bring a general securities fraud claim for "untruth or omission":  "[a] person who offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made . . . is liable to the person buying the security from him."  Tex. Rev. Civ. Stat. Art. 581-

---

[3]As noted above, it is unclear to the court whether the Cole motion is also made on behalf of Defendant Jackson, against whom Energytec has brought a state law claim for breach of fiduciary duty.  Insofar as Jackson has moved to dismiss this claim, the court **denies** her motion and exercises its supplemental jurisdiction over the claim.

33A(2).  The Fifth Circuit Court of Appeals, considering section 33A(2) of the TSA, noted that only

certain parties had standing to bring a claim:  "Persons who did not buy the security thus lack

standing to sue the person who offered or sold it."  *Ratner v. Sioux Nat'l Gas Corp.*, 770 F.2d 512,

517 (5th Cir. 1985).

Energytec has not alleged that it bought or sold any security from the Broker Defendants,

and presumably, its claim is based upon the aiding and abetting section of the TSA.  Section 33F(2)

provides: "A person who directly or indirectly with intent to deceive or defraud or with reckless

disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under

Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same

extent as if he were the seller, buyer, or issuer."  Tex. Rev. Civ. Stat. Art. 588-33F(2); *see also*

*Sterling Trust Co. v. Adderly*, 168 S.W.3d 835, 839 (Tex. 2005) ("[A]iders are jointly and severally

liable with the primarily violator to the same extent as if they were the primary violator.") (internal

quotations and brackets omitted).

Accordingly, the court determines that though Texas law allows for a claim for aiding and

abetting securities fraud, the Texas statute limits the remedy to one in privity with the sale of a

security.  Energytec argues that Texas courts have construed an "offer to sell" very broadly, but this

argument does not overcome the fact that aiding and abetting liability is limited by the privity

requirement of a primary violation.  Because Energytec was not a buyer or seller of a security, the

court **grants** the moving Broker Defendants' motion to dismiss the Texas securities claim.

### 2.      Common Law Fraud and Fraudulent Concealment

Finally, the moving Broker Defendants move to dismiss Energytec's common law fraud and

fraudulent concealment claim.  Defendants contend that the Complaint does not contain the "who,

what, where, when and how" allegations generally required in securities fraud cases. *See Herrmann Holdings*, 302 F.3d at 564-65.  In response, Energytec contends that it has met the particularity requirements. Having carefully considered the Complaint and the allegations as to the Broker Defendants, the court determines that this is a close call.  Drawing all inferences and resolving all doubts in favor of Energytec, however, the court determines that the Complaint alleges enough specific facts to support an inference of scienter  under *Tuchman* and satisfies Rule 9(b).  Moreover, as Energytec correctly asserts, the Complaint contains the "who, what, where, when and how" allegations generally required in securities fraud cases.   In close cases such as this, the better practice is to let the complaint stand and consider the adequacy of proof at the summary judgment stage. Accordingly, the moving Broker Defendants' motions to dismiss the common law fraud claim should be **denied**.

## V.      Conclusion

For the reasons stated herein, the court hereby **grants in part and denies in part** Defendant Philip M. Proctor's Motion to Dismiss Plaintiff's First Amended Consolidated Complaint; **denies** Defendant Cole's Motion to Dismiss Plaintiff[']s First Amended Consolidated Complaint; **grants in part and denies in part** Motion to Dismiss Plaintiff's First Amended Consolidated Complaint by Defendants Raymond J. Vula and Alice G. Vula; and **grants in part and denies in part** Motion to Dismiss Plaintiff's First Amended Consolidated Complaint by Defendants John J. Petito, Melvin R. Seligsohn, and Sam Miller.  Accordingly, the court **dismisses with prejudice** Energytec's Sixth Claim for Relief, namely, violation of section 10(b) and Rule 10b-5 against Defendants Proctor, Mr. Vula, Ms. Vula, Petito, Seligsohn, and Miller; and **dismisses with prejudice** Energytec's Eighth

Claim for Relief, namely, violation of Texas securities laws against Defendants Proctor, Mr. Vula,

Ms. Vula, Petito, Seligsohn, and Miller.

**It is so ordered** this 30th day of April, 2007.

Sam A. Lindsay
United States District Judge